UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
5:09CV-153-R

**MICHAEL COOPER**   **PLAINTIFF**

**v.**

**UNITED STATES ENRICHMENT CORPORATION**   **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Defendant has filed a motion for summary judgment (DN 21). Plaintiff has filed a response (DN 22). Defendant has filed a reply (DN 23). This motion is ripe for review, and summary judgment is DENIED.

## BACKGROUND

Plaintiff Michael Cooper is an employee of Defendant United States Enrichment Corporation ("USEC"). Plaintiff originally joined USEC in 1995 and served in various entry-level capacities until 2001. In 2001, he was hired into a position as an operator and placed as a cascade operator in the plant.

In November of 2004, Plaintiff suffered a heart attack. Plaintiff returned to work after six months, and had a temperature restriction placed on him by his treating cardiologist, Dr. Gwinn. Plaintiff was able to resume his prior position as a cascade operator and USEC was able to reasonably accommodate Plaintiff's temperature restriction. Plaintiff, however, continued to have medical issues. Plaintiff was taken to the emergency room at least two more times over the next year and had a defibrillator implanted. After missing at least an additional six months of work, Plaintiff was once again cleared to return to work in September of 2006 with the heat restriction and an additional respirator restriction from Dr. Gwinn. USEC also imposed an additional restriction that Plaintiff not operate any cranes.

In early 2007, Plaintiff applied for a position on USEC's truck crew. As a cascade operator, Plaintiff worked 12-hour shifts 3- to 4-days a week. On the truck crew, Plaintiff worked a standard 8-hour 5-day work week. Plaintiff believed that this change would allow him more flexibility in scheduling medical appointments and controlling his heart condition. At some point while working on the truck crew, it seems that the USEC medical staff added a sedentary work restriction to Plaintiff. In October of 2007, Plaintiff was taken to the hospital from USEC due to medical concerns.

Plaintiff's position at USEC was unionized and controlled by a collective bargaining agreement. In January of 2008, a more senior employee bid on Plaintiff's job with the truck crew. Because the other employee was more senior, Plaintiff was subject to a mandatory "bump" back to his position as a cascade operator. USEC, however, had concerns as to whether Plaintiff could safely perform the duties of a cascade operator in light of the medical issues and complications experienced by Plaintiff. As a temporary solution, USEC allowed Plaintiff to keep his job on the truck crew while determining if Plaintiff could safely perform any position available to a cascade operator.

USEC convened its ADA committee to evaluate Plaintiff. Plaintiff stated that the current sedentary restriction placed on him by USEC doctors was unnecessary as such a restriction was not required by Dr. Gwinn.. However, USEC had concerns as to whether the position of cascade operator was adequately described to Dr. Gwinn. Accordingly, USEC submitted a sheet with the job requirements of a cascade operator to Dr. Gwinn.[1] Dr. Gwinn indicated certain things that

---

[1] Plaintiff, in turn, challenges the accuracy of USEC's job description. Plaintiff maintains that the cascade operator and truck crew jobs were of similar difficulty and exertion.

Plaintiff should not engage in with a "no."[2] In response, USEC lifted the sedentary restriction and imposed more specific restrictions based on the marked-up job requirements sheet. However, Dr. Gwinn also stated that Plaintiff was free to resume his normal duties and responsibilities.

USEC attempted to resolve their concerns by contacting Dr. Gwinn. USEC, however, was unable to attain a satisfactory resolution as a result of these conversations. Plaintiff also had additional medical issues in April and July of 2008, further complicating the situation.

To reach a final resolution of the issue, Plaintiff and USEC agreed to have a second evaluation done.[3] The parties attempted to arrange a second evaluation from Dr. Lineberry. For reasons unknown, Dr. Lineberry never performed this second evaluation. Eventually, Plaintiff was seen by Dr. Daniels. On or around February 9, 2009, Dr. Daniels cleared Plaintiff to return to work.[4] Accordingly, the medical restrictions on Plaintiff were lifted, except for the 100 degree restriction imposed by Dr. Gwinn. Plaintiff returned to work as a cascade operator in March or April of 2009.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In

---

[2] For example, Dr. Gwinn circled and wrote "no" next to occasionally lifting, carrying, pushing and pulling a max weight of 50 pounds.

[3] At some point, Plaintiff also filed union grievances and EEOC complaints against USEC.

[4] Defendant states that Dr. Daniels cleared Plaintiff to work on February 25, 2009.

determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## ANALYSIS

Before the Court can analyze the claim, a framework must be established. Both parties seem to suggest that a burden shifting framework is appropriate, as generally established in *McDonnell Douglas Corp. v. Green*, 411 US 792 (1973). However, such a test is only appropriate if the plaintiff relies exclusively on circumstantial evidence to establish his claim. *Monette v. Elec. Data Sys. Co.*, 90 F.3d at 1179. Where there is direct evidence of disability discrimination, a different framework is applied. *Id.* at 1186. The current case involves direct evidence of disability discrimination. It seems uncontested by the parties that, but for Plaintiff's

4

congestive heart failure, he would have been immediately bumped into the cascade operator position. A case where an employer relies on the employee's disability in its decisionmaking will almost always involve direct evidence. *Id.* In a situation where there is direct evidence of discrimination, "the determinative disputed issue in the case will not be the employer's "intent," but instead in most cases will be whether the employee is "otherwise qualified," with or without reasonable accommodation, to perform the job, a factual dispute capable of resolution through traditional methods of proof." *Id.* at 1182.

## DIRECT EVIDENCE FRAMEWORK

In the Sixth Circuit, the following framework is applied if Plaintiff has offered direct evidence of discrimination:

> "[I]f the plaintiff has direct evidence that the employer relied on his or her disability in making an adverse employment decision, or if the employer admits reliance on the handicap: (1) The plaintiff bears the burden of establishing that he or she is "disabled." (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of providing that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer."

*Id.* at 1186.

**i.    Adverse employment action**

As made clear in the introduction to the framework, a plaintiff must first show an adverse employment action. An adverse employment action is a "materially adverse change in the terms and conditions" of a plaintiff's employment. *White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789, 797 (6th Cir. 2004). A "mere inconvenience or an alteration of job responsibilities" or a "bruised ego" is not enough to constitute an adverse employment action.

5

*Id.* (citing *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)). Examples of adverse employment actions include termination, failure to promote, suspensions, and a material loss of benefits. *Smith v. City of Salem*, 378 F.3d 566, 575-76 (6th Cir. 2004).

An adverse employment action is more likely to involve a reassignment than a denial of a reassignment. However, there is no indication in the law that the analysis of the two should be different, especially when a reassignment guaranteed by contract is denied. *Compare with Blackburn v. Shelby Cnty.*, No. 2:07-cv-02815, 2011 WL 692808 (W.D. Tenn. 2011) (denial of reassignment not an adverse employment action absent evidence of a tangible detriment to employment or a right to reassignment). In the Sixth Circuit, "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Kocsis*, 97 F.3d at 885 (citing *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir.1987)). "A reassignment without salary or work hour changes, however, may be an adverse employment action if it constitutes a demotion evidenced by 'a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *White*, 364 F.3d at 797 (quoting *Kocsis*, 97 F.3d at 885).

The Sixth Circuit further refined the definition of "adverse employment action" in *Spees v. James Marine*, 617 F.3d 380 (6th Cir. 2010). The Sixth Circuit stated that an adverse employment action can result from a reassignment if one position is less challenging and "more boring" than another or if one position is generally unskilled while another requires some specific training, even if the training is somewhat limited. *Id.* at 392.

Looking at the totality of the evidence, denying Plaintiff's reassignment solely on the

6

basis of his disability could be determined by a jury to be an adverse employment action. Plaintiff claims that he would have received as much as $1000 more a month as a cascade operator. Plaintiff also would have been working different hours, although it is unclear from the testimony if he had a preference for the hours of either position. Finally, Plaintiff testified at his deposition that there was training and certification that accompanied a cascade operator position. There was no indication that such training and certification opportunities were available to Plaintiff at his job on the truck crew. Because of the difference in hours, wages and training of the two positions, there are questions of fact as to whether Plaintiff suffered an adverse employment action.

In conclusion, whether Plaintiff suffered an adverse employment action when his 'bump' was postponed is a question of fact that must be addressed by the jury.

**ii.     "Disabled"**

For the purposes of summary judgment, Defendant has not contested that Plaintiff has a disability within the meaning of the ADA.

**iii.    "Otherwise qualified"**

A plaintiff bears the burden of showing that he is "otherwise qualified" for a position despite a disability.

This case is a hybrid of the "otherwise qualified" situations discussed by the Sixth Circuit. Plaintiff claimed that he needed no accommodation for the job of cascade operator[5] other than the 100 degree Fahrenheit accommodation, which is reasonable.[6] Defendant agreed

---

[5]Part (2)(a) of the *Monette* test

[6]Part (2)(c) of the *Monette* test

that the 100 degree Fahrenheit accommodation was reasonable, but disagreed that Plaintiff could safely perform the duties of a cascade operator without some other, unreasonable, accommodation. Since the parties agree that the 100 degree restriction is reasonable, the only contested issue is whether Plaintiff could perform the essential requirements of a cascade operator with no additional accommodation, as claimed by Plaintiff, or whether Plaintiff required additional, unreasonable accommodations to perform the essential requirements, as claimed by USEC until the second evaluation was completed.

This case does not fit cleanly into established "otherwise qualified" precedent, since the alleged adverse employment action was a mere delay and Plaintiff was eventually determined to be otherwise qualified to perform the job. Since Defendant delayed Plaintiff's transfer on the grounds that Plaintiff could not safely perform as a cascade operator, Plaintiff claims that *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426 (6th Cir. 1999), is applicable. In *Hamlin*, the 6th Circuit articulated a standard for showing that a plaintiff was not able to perform his job functions without being a "direct threat" to himself or others. *Id.* at 431. If a plaintiff is a direct threat, an adverse employment action is legal. *Id.* However, in this case, Defendant never claimed that Plaintiff was a direct threat - rather, Defendant claimed that they were unable to ascertain whether Plaintiff was a direct threat and were required to delay his transfer until there was enough evidence to reach a conclusion. Accordingly, *Hamlin* is inapplicable.

Defendant argues that they were legally entitled to request the medical exam. "Health problems that significantly affect an employee's performance of essential job functions justify ordering a physical examination." *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 812 (6th Cir. 1999). However, these cases do not address whether it was appropriate for Defendant to

8

subject Plaintiff to an alleged adverse employment action while awaiting the medical exam. Additionally, nobody contests Plaintiff's ability to perform his job on the truck crew. Since the examination was requested before Plaintiff was transferred to a cascade operator position, the requirements of a cascade operator were not, at that time, an "essential job function" justifying a physical exam. Accordingly, this Court must look elsewhere to resolve the instant issue.

The Sixth Circuit makes clear that a plaintiff bears the burden of showing that he is "otherwise qualified" to perform a job. The best way to apply Sixth Circuit precedent to the instant case is to examine when Plaintiff met his burden of demonstrating that he was "otherwise qualified" for the position despite his disability with reasonable accommodation from USEC. This determination is a question of fact. In addition, there is clearly conflicting evidence as to when Plaintiff established that he was "otherwise qualified." Plaintiff essentially claims that his performance of the same job prior to a transfer to the truck crew and the various notes from Dr. Gwinn stating that he could switch back to his prior position with the 100 degree Fahrenheit restriction establish that he was otherwise qualified with a reasonable accommodation.[7] Any failure to immediately institute Plaintiff's bump was therefore discrimination on the basis of Plaintiff's disability. Defendant essentially claims that Plaintiff's health had deteriorated since he had last performed the job of cascade operator and the notes from Dr. Gwinn were ambiguous at best and Plaintiff accordingly failed to meet his burden of proof. As a result, according to Defendant, Defendant was entitled to conduct a reasonable investigation to determine whether Plaintiff was, in fact, "otherwise qualified" to safely perform the job duties of a cascade operator.

---

[7]Since neither party addressed this exact issue, this Court is required to distill each sides respective arguments from the facts and arguments presented.

Since Plaintiff was transferred shortly after the conclusion of the investigation established that Plaintiff was "otherwise qualified," there was no disability discrimination.

Approaching the "otherwise qualified" determination from this angle also fits with the precedent on requesting medical examinations. If, at the time the second opinion was requested, Plaintiff had not met his burden to demonstrate that he was "otherwise qualified" for the cascade operator position, the request was clearly timely and appropriate and Defendant properly 'bumped' Plaintiff after the results of the second opinion came back positive. If, on the other hand, Plaintiff had already met his burden of showing that he was otherwise qualified, any delay in 'bumping' Plaintiff was discriminatory and an alleged adverse employment action. Under the case law cited by Defendant, Defendant may have been able to require a second medical evaluation after granting Plaintiff his bump, if there was still a business necessity to evaluate Plaintiff, but that is not a question before this Court.

Because there is a question of fact as to when Plaintiff met his burden of showing that he was reasonably qualified, summary judgment is not appropriate.

**iv.    "Essential"**

An employer bears the burden of establishing that a challenged job criteria is essential or that a proposed accommodation is unreasonable.

Prior to his transfer, Plaintiff had two issues: (1) Plaintiff's 100 degree Fahrenheit restriction from Dr. Gwinn; and (2) Plaintiff's alleged sedentary restriction from Dr. Gwinn.[8] Defendant had accommodated a 100 degree Fahrenheit restriction in the past and does not

---

[8]Dr. Gwinn, of course, never explicitly placed Plaintiff on a sedentary restriction. Defendant claims, however, that they had reason to believe that Plaintiff described his job as largely sedentary and Dr. Gwinn therefore implicitly incorporated that into his restrictions.

seriously argue that such a restriction could not be reasonably accommodated. Similarly, Plaintiff does not seem to contend that he could have performed the role of a cascade operator if he had truly been placed on a sedentary work restriction by Dr. Gwinn. Accordingly, there seems to be no disputed issues within this portion of the discrimination framework.

## CONCLUSION

When applying Sixth Circuit law to the facts of this case, there is a factual issue as to whether Plaintiff suffered an adverse employment action when Defendant delayed his transfer to a job that was higher-paying, involved different hours, involved some degree of training, and may have been less "boring." Once a question of fact is established as to whether an adverse employment action has occurred, this Court must move on to the framework established in *Monette*. While the current situation does not fit cleanly into any of the precedent cited by the parties, the best application of *Monette* is to require Plaintiff to bear the burden of establishing that he was "otherwise qualified" for the position. There is a factual issue as to when Plaintiff met that burden. Accordingly, summary judgment is not appropriate and the motion is DENIED.

IT IS SO ORDERED.